FILED
JUN 19 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Earl M. Boyd
5905 Mardella Blvd
Clinton, MD 20735-2253
Telephone 301-868-0008

    Plaintiff

VS.

Case: 1:07-cv-01098
Assigned To : Friedman, Paul L.
Assign. Date : 6/19/2007
Description: FOIA/Privacy Act

JURY ACTION

Michael Chertoff, Secretary
U.S. Department of Homeland Security
Washington, DC 20528

    Defendant

## COMPLAINT

1.1 Plaintiff is filing this complaint alleging violations of the provisions of the Privacy Act of 1974, Public Law 93-579, violations of provisions of the Code of Federal Regulations 5 CFR 293-Personnel Records and violations of provisions of the Code of Federal Regulations 5 CFR 297-Privacy Procedures for Personnel Records by Defendant through subordinate managers and Agency policies and practices as detailed in this Complaint.

1.2 Plaintiff is alleging that the violations of the Privacy Act of 1974 committed by Defendant, through the actions of Defendant's subordinate managers in their individual capacities on behalf of Defendant, as contained in 5 U.S.C. § 552a and the Code of Federal Regulations constitute a deprivation of Plaintiff's rights and

privileges secured under the laws of the United States, thereby making Defendant liable to Plaintiff as the injured party under the provisions of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

2.1 This court has jurisdiction and venue since the U.S. Department of Homeland Security (DHS) is an agency of the Government of the United States with its headquarters located in the District of Columbia.

2.2 This court has jurisdiction and venue since Complainant is an employee of DHS who is assigned to work at a location in the District of Columbia.

2.3 This court has jurisdiction over this action under the provisions of 5 U.S.C. § 552a(g)(1)(B) and 5 U.S.C. § 552a(g)(1)(C) which provide for civil remedies and the individual may bring a civil action against the agency in the district Courts of the United States.

## STATEMENT OF FACTS

3.1 Plaintiff is a 53-year-old Black male citizen of the United States who is employed by the U.S. Department of Homeland Security, Federal Protective Service (FPS) as a Supervisory Physical Security Specialist, GS-0080-14, assigned to a uniform position in the National Capital Region (NCR) as a District Commander at the rank of Colonel.

3.2 Plaintiff began his employment with the U.S. General Services Administration, (GSA) Federal Protective Service, on July 31, 2000 as Supervisory Police Officer, GS-0083-14, assigned to a uniform position in NCR as Chief of Police.

3.3. As a part of the FPS pre-employment screening process conducted in 2000 in accordance with the provisions of 5 CFR 339-Medical Qualification Determinations, Plaintiff underwent a medical examination and a psychiatric examination or psychological assessment conducted by physicians and practitioners provided by FPS at the times and places designated by FPS.

3.4 As a part of the FPS pre-employment medical screening process, Plaintiff signed an authorization form authorizing Plaintiff's former employer, the Metropolitan Police Department in Washington, D.C. (MPDC), to grant FPS physicians access to any and all medical records pertaining Plaintiff that MPDC may have in its possession.

3.5 During the FPS pre-employment screening process conducted in 2000, FPS physicians determined that Plaintiff suffered from color blindness or color vision deficiency, which is also known as Dyschromatopsia after Plaintiff failed to pass the Ishihara color test.

3.6 During the medical screening, Plaintiff advised the examining physician that Plaintiff had been diagnosed with color blindness or color vision deficiency during Plaintiff's physical examination for the military in June 1973 prior to Plaintiff entering the United States Army in August 1973.

3.7 Notwithstanding the FPS determination that Plaintiff suffered from color blindness or color vision deficiency, FPS hired the Plaintiff on July 31, 2000.

3.8 As a uniform law enforcement employee of MPDC, sometime around the late 1970s, Plaintiff had submitted medical documentation to the MPDC Police and Fire Clinic that close shaving caused a problem for Plaintiff's face due to a

condition known as Pseudofolliculitis barbae, also known as PBF or "razor bumps", in order that this medical documentation could be made a part of Plaintiff's medical records with MPDC since uniform members were not allowed to wear beards unless granted a waiver due to medical reasons.

3.9 From the late 1970s until Plaintiff retired from MPDC on July 29, 2000, Plaintiff wore a beard and Plaintiff was never again asked to produce the medical documentation that Plaintiff had submitted to MPDC for his medical records.

3.10 During pre-employment medical screening with FPS, Plaintiff was never asked about the medical certification in his MPDC medical records for his beard even though Plaintiff was wearing a beard at the time of his two interviews with FPS and during his pre-employment medical screening.

3.11 On or about March 1, 2003, FPS was moved from GSA to DHS.

## 2005 FPS MEDICAL EXAMINATION

4.1 On or about March 29, 2005, at the direction of FPS, Plaintiff underwent a physical examination conducted by a FPS-contracted physician and practitioners.

4.2 During the March 29, 2005 physical examination, Plaintiff was given the Ishihara color test and Plaintiff failed the test.

4.3 During that physical examination, Plaintiff advised the examining physician that Plaintiff had been diagnosed as colorblind in 1973 when taking a physical for the military and Plaintiff had again been diagnosed as colorblind in 2000 during Plaintiff's pre-employment screening for his position with FPS.

4.4 Notwithstanding Plaintiff advising the examining physician of the previously diagnosed colorblindness, in a DHS FPS Medical Review Form dated April 6,

4

2005, Lawrence P. Saladino, MD, Reviewing Physician, Comprehensive Health Services, Inc. (CHS) issued a medical determination for Plaintiff stating "a medical recommendation for the position of Physical Security Specialist – 080 series cannot be given based on the examination and diagnostic testing documentation...following findings appear to be outside of the prevailing medical standards: 1. A color vision test was abnormal with one item out of 14 on an Ishihara test."

4.4 In the DHS FPS Medical Review Form dated April 6, 2005, Dr. Saladino stated "Please submit the following documentation to clarify the issues identified: 1. Results of a Farnsworth D15 test of color vision."

4.5 Dr. Saladino concluded the DHS FPS Medical Review Form dated April 6, 2005 by stating "the review was based on: Report of Medical History and Physical Examination, including laboratory and diagnostic tests dated 03/29/2005."

4.6 Despite the fact that FPS had diagnosed Plaintiff as being colorblind in 2000 prior to his employment with FPS, Dr. Saladino used Plaintiff's colorblindness as a basis for not giving a Plaintiff a favorable medical determination for continuing his employment.

4.7 FPS policy has been that unless an employee's Regional Director issues a waiver for a medical condition that causes an unfavorable medical determination for a position with medical requirements, the employee will be proposed for removal from that position.

4.8 On May 18, 2005, Plaintiff sent an email message to FPS NCR Regional Medical Coordinator Antonia Acevedo, her immediate supervisor Michelle C. Bryan, FPS NCR Mission Support Chief Earl D. Mahmoud, Deputy Regional Director Dean S. Hunter and Regional Director Joseph W. Trindal concerning the information from Dr. Saladino advising them although Plaintiff was willing to take the Farnsworth D15 color test, Plaintiff had been unable to find any medical facility that could administer the Farnsworth D15 color test.

4.9 In Plaintiff's May 18, 2005, email message, Plaintiff also advised the parties thereto of the fact that the FPS examining physician who conducted Plaintiff's pre-employment medical examination had already discovered Plaintiff's colorblindness and that FPS had waived that medical requirement for Plaintiff.

4.10 In a DHS FPS Medical Review Form dated, May 26, 2005, concerning Plaintiff's colorblindness, Dr. Saladino wrote "Information was recently requested regarding abnormal color vision. Documentation of a previous color vision waiver has been received from the program manager, Ms. Susan Spannbauer...No additional information is needed at this time regarding the color vision. A copy of the previous color vision waiver has been requested from FPS headquarters."

4.11 The occupation-related medical information provided to Dr. Saladino by Ms. Spannbauer came after Plaintiff's May 18, 2005 email message to his FPS NCR superiors (Mr. Hunter and Mr. Trindal) and FPS NCR Mission Support personnel involved in the FPS NCR medical review process.

4.12 The DHS FPS Medical Review Form dated April 6, 2005 caused Plaintiff to be seriously concerned about his future employment with FPS and caused

Plaintiff to have to reveal private medical information about himself that FPS had already been provided in 2000 in order to get Dr. Saladino to stop pursuing the colorblindness issue in determining Plaintiff's medical determination for his position with FPS.

4.13 In a DHS FPS Medical Review Form dated August 15, 2005, on Plaintiff's medical determination Dr. Saladino stated "This employee remains medically qualified to perform the full range of duties and responsibilities as a Physical Security Specialist – 080 series in the Federal Protective Service – DHS. There are no apparent impairments, medical conditions, and/or medications that are known to adversely impact upon the efficient performance of the essential functions and safety-sensitive duties and responsibilities of this job."

## FPS DIRECTIVE NUMBER FPS-05-012

5.1 On July 19, 2005, FPS Directive Number FPS-05-012 entitled "Uniform, Grooming, and Awards-Part I" was issued and became effective.

5.2 FPS-05-012 6.1 Grooming states in part "The uniform is a key visual component in achieving a professional image...This image is enhanced by adherence to prescribed personal appearance standards...All FPS uniformed employees shall comply with the following personal appearance standards."

5.3 FPS-05-012 6.1.1 Facial Hair states in part "Other than a mustache and/or sideburns, facial hair is not permitted, except as authorized for SA and described below...Beards are not permitted, except for; medical conditions (officers must present a written statement from a medical doctor to their immediate field supervisor, verifying the existence of such a medical condition)...SA, while in

plainclothes and carrying out their day-to-day duties, may grow a conservative goatee or short beard, upon approval of the RD or designee...Beards for SA shall be trimmed to a length of no more than one-quarter of an inch long...All areas of the face surrounding the facial hair shall be cleanly shaved."

### DIRECTIVES OF FPS MANAGEMENT OFFICIAL PAUL D. CONSTABLE

6.1 On Tuesday, June 5, 2007, although Plaintiff has worn a beard since Plaintiff began his employment with FPS NCR on July 31, 2000, Plaintiff's current immediate supervisor, Acting Deputy Regional Director for FPS NCR, Paul D. Constable, directed Plaintiff both verbally and in an email message entitled "Hereby Directed to Produce Medical Certificate NLT September 30, 2007" to provide him with a medical certificate for Plaintiff's beard and that Plaintiff's "Failure to provide me with requirement documentation may lead to disciplinary action" even though Plaintiff had advised Mr. Constable that Plaintiff had submitted the medical certification to his previous employer (MPDC), that the medical documentation had been placed in Plaintiff's medical records during the late 1970s and that Plaintiff had made his medical records available to FPS before FPS hired the Plaintiff in 2000.

6.2 On Tuesday, June 5, 2007, in an email message to Plaintiff and others, including Mr. Constable's immediate supervisor Acting Regional Director Dennis P. O'Connor, Mr. Constable provided his rules for beards by stating "The beard hairs will be trimmed symmetrically and do not protrude more than ½-inch from the skin surface...The medical permission to be unshaved is granted only for the duration of the skin disorder...Therefore, the physician's certificate must be

updated every 90 days, unless the physician certifies that the skin disorder may last longer than 90 days."

6.3 On Tuesday, June 5, 2007, in an email message to Plaintiff concerning Plaintiff's statement that Plaintiff had been advised by an FPS NCR employee in the Mission Support Branch where some medical records were kept that the medical records at that location were only kept for three (3) years, the Plaintiff was chastised by Mr. Constable, who wrote "Get me a medical document to cover you. I have served this country for 34 years and I have a copy of every medical record from the time I joined the military in 1972. You may want to improve your personal file retrieval" as if Plaintiff is to be held personally responsible for maintaining his own occupation related medical documentation that the agency had access to when Plaintiff was hired and since that time.

6.4 In response to Mr. Constable's directive to Plaintiff to provide Mr. Constable with medical documentation concerning Plaintiff not shaving closely by September 30, 2007 or face disciplinary from Mr. Constable, Plaintiff chose not to work under the threat of discipline for such a lengthy period and made contact with his physician, Paul M. Wilson, MD, PC, advised Dr. Wilson of what Plaintiff needed from him, responded to Dr. Wilson's office to see Dr. Wilson and obtained from Dr. Wilson a "Certificate of Health Status" dated June 12, 2007.

6.5 In the "Certificate of Health Status" dated June 12, 2007, Dr. Wilson stated in the comments section of the report "Mr. Boyd has severe Pseudofolliculitis barbae (razor bumps) and should refrain from close shaving".

6.6 Mr. Constable's demand to Plaintiff, as a Black career law enforcement officer, to directly provide to Mr. Constable, a White male supervisor, medical documentation concerning a condition for which Plaintiff had been diagnosed over 27 years ago caused Plaintiff such a great amount of distress since Plaintiff had worked in uniform with a beard for the past 27 years without anyone requiring Plaintiff to show them medical documentation concerning his beard that Plaintiff requested to be placed on sick leave to seek the medical certification that Mr. Constable had demanded and to deal with the distress that Plaintiff was experiencing as a result of Mr. Constable's actions towards Plaintiff because of Plaintiff's medical condition as it pertained to Plaintiff's inability to shave closely.

6.7 Notwithstanding Plaintiff's objection to having to submit medical certification to Mr. Constable, who is not a medical doctor, on June 15, 2007, Plaintiff emailed a scanned copy of the June 12, 2007 "Certificate of Health Status" to Mr. Constable, with a copy to Mr. O'Connor, who is also not a medical doctor.

## CAUSE OF ACTION

7.1 Plaintiff believes that FPS-05-012 provisions requiring uniform members who wear beards because they have "medical conditions" to "present a written statement from a medical doctor to their immediate field supervisor, verifying the existence of such a medical condition" is not consistent with the requirements of 5 CFR 293 Personnel Records.

7.2 Under the provisions of 5 CFR § 293.504 Composition of, and access to, the Employee Medical File System "(a) All employee medical records... whether they are maintained in an automated, microform, or paper mode, and wherever

located in the agency, are part of the EMFS. The records maintained in the EMFS are part of a Governmentwide Privacy Act system of records established by the Office. Agencies have the responsibility to ensure that such documents are maintained in accordance with the Office's Privacy Act regulations in part 297 of this chapter, with the agency's instructions implementing those regulations, and with the retention schedule for employee medical records stipulated in §293.511."

7.3 Plaintiff believes that Mr. Constable's directive on Tuesday, June 5, 2007 to provide Mr. Constable with medical certification as specified by Mr. Constable is in direct violation of the provisions of 5 CFR § 293.504(b) which provides "Disclosure of an employee's occupational medical records to agency officials (both medical and non-medical) will be granted only when the specific information sought is needed for the performance of official duties" since Plaintiff's wearing of a beard due to a "medical condition" has nothing to with Plaintiff's performance of official duties and FPS-05-012 only addresses the wearing of a beard as a part of the "personal appearance standards".

7.4 On Monday, June 11, 2007, Plaintiff submitted an email request to FPS NCR Acting Regional Director Dennis O'Connor requesting access to Plaintiff's Employee Medical System File records on file with FPS under the provisions of 5 CFR § 293.504(b) which provide "Agencies must provide employees access to their own EMFS records consistent with Office regulations contained in §297.204(c) of this chapter" to which Mr. O'Connor responded that he forwarded

Plaintiff's request to Susan Spannbauer, FPS medical coordinator and he will let Plaintiff know what she says.

7.5 On Wednesday, June 13, 2007, Plaintiff contacted Ms. Antonia Acevedo, FPS NCR Regional Medical Coordinator, to ascertain if Ms. Acevedo had Plaintiff's medical records in her files and Ms. Acevedo advised Plaintiff that the only medical records she had in her files at FPS NCR for Plaintiff were from Plaintiff's 2005 medical evaluation. When asked if she knew the location of Plaintiff's medical records from Plaintiff's pre-employment medical screening Ms. Acevedo responded that she did not know the location of those medical records. Since as of Monday, June 18, 2007, which is one week after Plaintiff's request, Plaintiff has received no response from FPS on Plaintiff's request to access to his EMFS records, Plaintiff believes that FPS is in violation of the access provisions of 5 CFR § 293.504(b) and 5 USC § 552a(d)(1) which provides "Each agency that maintains a system of records shall—(1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him."

7.6 Plaintiff believes that FPS-05-012 provisions requiring uniform members who wear a beard because they have "medical conditions" to "present a written statement from a medical doctor to their immediate field supervisor, verifying the existence of such a medical condition" is not consistent with the requirements of 5 CFR 297 Privacy Procedures for Personnel Records.

7.7 Plaintiff believes that uniform members who wear a beard because they have "medical conditions" should be required to submit their written statement from a medical doctor to the agency as a part of the Employee Medical File System occupational medical records rather than submitting such medical documentation to the members' field supervisors since members' field supervisors are subject to change numerous times over the course of members' careers with agency, thereby resulting in the members' having to constantly produce such medical documentation upon the request or demand of several field supervisors during the years, with no provisions for maintaining those documents.

7.8 Since neither Mr. Constable nor members' field supervisors are medical doctors, Plaintiff believes that FPS-05-012 is in violation of the provisions of 5 CFR 297.205 Access to Medical Records which provides "When a request for access involves medical or psychological records...the requester should be advised that the material will be provided only to a physician designated by the data subject. Upon receipt of the designation and upon verification of the physician's identity, the records will be made available to the physician, who will have full authority to disclose those records to the data subject when appropriate."

7.9 Plaintiff believes that Mr. Constable has apparently taken on the role of a "reviewing physician" since he has set forth conditions for the medical documentation when he stated "The medical permission to be unshaved is granted only for the duration of the skin disorder...Therefore, the physician's

13

certificate must be updated every 90 days, unless the physician certifies that the skin disorder may last longer than 90 days."

7.10 Plaintiff believes that the April 6, 2005 DHS FPS Medical Review Form from Dr. Saladino concerning Plaintiff's colorblindness is evidence that FPS is not properly maintaining Plaintiff's occupational medical records in accordance with the applicable law and regulations cited in this Complaint since Dr. Saladino was apparently unaware of the prior diagnosis of colorblindness and the previous waiver of that requirement when he reviewed Plaintiff's medical records in 2005 and used that diagnosis as part of his basis for not finding Plaintiff medically qualified to continue to perform Plaintiff duties and responsibilities, causing Plaintiff a great deal of distress and concern for Plaintiff's future employment with the agency even though Plaintiff had been performing his duties satisfactorily for almost five (5) years.  5 USC § 552a(e)(5) provides "Each agency that maintains a system of records shall—(5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination".

7.11 Plaintiff believes that the facts of this matter clearly show that that the violations of the Privacy Act of 1974 committed by Defendant, through the actions of Defendant's subordinate managers in their individual capacities on behalf of Defendant, as contained in 5 U.S.C. § 552a and the Code of Federal Regulations constitute a deprivation of Plaintiff's rights and privileges secured

under the laws of the United States, thereby making Defendant liable to Plaintiff as the injured under the provisions of 42 U.S.C. § 1983.

## RELIEF SOUGHT

8.1 Wherefore, the Plaintiff requests that the Court enter a judgment including, but not limited to:

    A.    Order Defendant to provide Plaintiff access to all of Plaintiff's occupational medical records created by Defendant, FPS or their agents which were either created by or came into their possession from the time of Plaintiff's pre-employment medical and psychiatric examination in 2000 until the present date.

    B.    A temporary injunction ordering Defendant and all of his subordinate managers and supervisors in FPS to cease requiring and directing uniform FPS employees wearing beards due to medical conditions from submitting medical statements from their medical doctors to FPS managers and supervisors who are not medical doctors.

    C.    Compensatory damages for violation of the laws of the United States and the Code of Federal Regulations;

    D.    Exemplary and punitive damages;

    E.    Attorney's fees and court costs; and

    F.    All other appropriate relief as the Court may deem just and proper.

## JURY DEMAND

9.1 Plaintiff demands a trial by jury for all issues so triable.

Dated: June 18, 2007                    Respectfully submitted,

By: _____

Earl M. Boyd (Pro Se)

5905 Mardella Blvd

Clinton, MD 20735

301-868-0008

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Earl M. Boyd
5905 Mardella Blvd, Clinton, MD 20735-2253
Telephone: (301)868-0008

88888

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Michael Chertoff, Secretary
U.S. Department of Homeland Security
Washington, DC 20523

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Earl M. Boyd (Pro Se)
5905 Mardella Blvd
Clinton, MD 20735-2253
Telephone: (301)868-0008

Case: 1:07-cv-01098
Assigned To : Friedman, Paul L.
Assign. Date : 6/19/2007
Description: FOIA/Privacy Act

**JURY ACTION**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ⊙ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☒ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
5 USC 552a(g)(1)(B) & 5 USC 552a(g)(1)(C). Defendant refusing and failing to comply with provisions of Privacy Act of 1974 concerning medical records.

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE June 19, 2007   SIGNATURE OF ATTORNEY OF RECORD /s/ [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

✓